In the Matter of AMERICAN FIBRE CHAIR SEAT CORPORATION.
Petition of ARTHUR J. KINSMAN, Appellant, Pursuant to Section 25 of the General Corporation Law; WILLIAM DAUM and Others, Respondents.

Second Department, June 4, 1934.

*Isaac N. Jacobson,* for the appellant.

*Isidore I. Haber,* for the respondents.

DAVIS, J. The appellant as petitioner invoked the summary powers of the court under the provisions of section 25 of the General Corporation Law in respect to the election of one of the directors of American Fibre Chair Seat Corporation, it being claimed that Alfred Huller, and not Charles Schatz, was duly elected a director at the stockholders' meeting on March 3, 1934. No question is raised as to the procedure adopted.

The sole question to be determined relates to the right of cumulative voting. The counsel are in agreement that the question is novel and one of first impression. In the absence of express statute or of compliance with a permissive statute, may stockholders agree among themselves and become bound by by-laws, and other acts in the nature of a contract, that shareholders may be permitted to vote their stock cumulatively?

The facts, although somewhat in dispute, will be stated as we deem them established by the record. The corporation was organ-

ized by the petitioner and one Weiser about 1916. Each of the two owned one-half of the stock. The petitioner had married a sister of the respondents Daum, and later they desired to be taken into the business. First the stock of Weiser was purchased and then the petitioner sold a part of his stock, so that the three held an equal number of shares. The petitioner was reluctant to enter into this arrangement for the reason that it made him a minority stockholder and he might easily lose control of the business. The Daums reassured him on this question, agreeing that he should never lose control. It was agreed that all should receive salaries in equal amounts, and that an amended certificate of incorporation should be made and executed providing for cumulative voting, and such certificate was prepared early in 1921. Through no fault of the petitioner, this amended certificate was suppressed and was never filed in the office of the Secretary of State. It contained a provision for cumulative voting in the manner provided by section 49 of the Stock Corporation Law.

In addition, at about the same time, the by-laws of the corporation were amended to provide specifically for cumulative voting of the shares, as was provided in the amended certificate, with a further provision that these by-laws should not be amended except by a vote of eighty-five per cent of the stock in favor of the amendment. In this manner the policy of the corporation and its shareholders was settled for the future so that the petitioner would retain his rights in the management of the corporation and could not be ousted of any control thereof at the caprice or through the collusion of the other stockholders. The petitioner relinquished a part of his shares on the strength of these agreements.

For some years matters ran harmoniously among the shareholders, and evidently the re-election of directors was a mere formality, with no question raised as to the manner of voting. Then the respondents gave notice to the petitioner that they proposed to stop the drawing of his salary and to make him only a nominal head of the corporation. Having taken legal counsel, the petitioner prepared to meet the issue by a resort to his right to vote his stock cumulatively. The trouble that arose between the petitioner and the two respondents has no bearing on the legal question. It is sufficient to say that the Daums planned to elect a fourth director of their own choice and thereby control the board. At the stockholders' meeting Kinsman voted his stock in such a manner cumulatively that Huller, his choice, received more votes for director than Schatz, the choice of the respondents. The latter regarded Schatz elected, he was recognized by them as a member of the board, and he took part in a directors' meeting where it was

proposed to amend the by-laws in certain respects without a vote of eighty-five per cent of the stock. The election of Schatz has been declared valid by the order at Special Term. We reach a different conclusion.

At common law each stockholder of a corporation, regardless of the number of shares he held, was entitled to only one vote (3 Cook Corp. [8th ed.] § 609; *Matter of Rochester District Tel. Co.*, 40 Hun, 172, 174; *Taylor* v. *Griswold*, 14 N. J. Law, 222); but this rule has been almost universally changed by statute so that stockholders may vote in proportion to the number of shares held by them. In this State there has long been a statute to that effect, now contained in section 47 of the Stock Corporation Law, which provides: " Unless otherwise provided in the certificate of incorporation or other certificate filed pursuant to law, every stockholder of record of a stock corporation shall be entitled at every meeting of the corporation to one vote for every share of stock standing in his name on the books of the corporation." It is further provided in the same section that the stockholders may by by-law prescribe a period, not exceeding forty days prior to the meeting of the stockholders, during which no transfer of stock can be made on the books. Therefore, the right of a stockholder may be limited somewhat by the adoption of a by-law.

Before statutes giving such rights to stockholders had been enacted, a by-law might legally authorize one vote for each share of stock; or, where the statutes were silent on the subject, a by-law might give each shareholder one vote for each share up to ten, and fix the proportion of votes which he might cast in excess of that number. (Cook, *op. cit., supra*, § 609.) It appears, therefore, that in the absence of a statute, stockholders amongst themselves might make an agreement concerning the votes to which shares were entitled.

A by-law is in the nature of a contract among shareholders and may become as much the law of the corporation as if its provisions had been made a part of the charter. It is a " compact between the corporation and every taker of a share * * *. The holding and owning of a share gave a right which could not be divested without the assent of the holder and owner; or unless the power so to do had been reserved in some way." (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 179.) (See, also, to the same effect, *Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103, 107; *Cowles* v. *Cowles Realty Co.*, 201 App. Div. 460; *Loewenthal* v. *Rubber Reclaiming Co.*, 52 N. J. Eq. 440; *Weiland* v. *Hogan*, 177 Mich. 626, 630, 631; 8 Fletcher Cyclopedia of Corporations [Permanent ed.], § 4194.)

In this case we think the by-law and the executed agreement contained in the amended certificate of incorporation constituted a contract among the shareholders, binding them, and enforcible unless positively forbidden by some statute or contrary to public policy. It was intended thereby to give petitioner vested legal rights. The provisions above quoted from section 47 of the Stock Corporation Law do not forbid the shareholders from making an agreement among themselves as to the manner of voting. It simply says that each stockholder " shall be entitled   *   *   *   to one vote for every share of stock standing in his name." The respondents have not been denied that right. They cast one vote for every share of stock held by them for each of the four directors to be elected.

Broad powers are given by section 14, subdivision 5, of the General Corporation Law " To make by-laws, not inconsistent with law, for the management of its business, the regulation of its affairs," and to fix the amount of stock which must be represented at meetings of the stockholders or members to constitute a quorum, unless otherwise provided by law; and by-laws duly adopted shall control the action of directors except as therein otherwise provided.

Section 49 of the Stock Corporation Law provides that " The certificate of incorporation of any stock corporation or other certificate filed pursuant to law may provide that at all elections of directors of such corporation each stockholder shall be entitled to as many votes as shall equal the number of his shares of stock multiplied by the number of directors to be elected, and that he may cast all of such votes for a single director or may distribute them among the number to be voted for, or any two or more of them, as he may see fit, which right, when exercised, shall be termed cumulative voting." The only other reference to cumulative voting that we find in the statute is contained in section 55 of the Stock Corporation Law providing for the election of directors, wherein it is said: " When cumulative voting is authorized by the certificate of incorporation or by any certificate filed pursuant to law, any provision regarding a quorum must be contained in such certificate."

We find nothing here that forbids an agreement amongst all stockholders as to the manner in which the shares may be voted, provided that such agreement does not limit the right to cast one vote for each share. We view the statute relating to cumulative voting as permissive and not mandatory. It provides a method of permanent adoption of cumulative voting as a matter of public record not readily subject to modification or change as a by-law might be. Such a by-law as is here considered constitutes no unreasonable restraint on the rights of the corporation or its stock-

holders. As we view it, the adoption of the by-law by the entire number of stockholders was not inherently illegal. We are not called upon to determine whether such a by-law would be binding if adopted by a bare majority of the stockholders, with the minority protesting.

By-laws dealing with the business affairs of the corporation and limiting the free action of shareholders, although not authorized by any positive law, have been held legal and binding on the corporation and its stockholders; and if such a by-law is not inconsistent with a statute, it will be enforced as a contract. (*Hassel* v. *Pohle*, 214 App. Div. 654.) The courts will not pursue investigation of the validity thereof further than to inquire whether it is inconsistent with the laws of this State. (*Burden* v. *Burden*, 8 App. Div. 160, 174; affd., 159 N. Y. 287.)

As we have said, a fair contract among all shareholders established by by-law or other agreement, such as the amended certificate of incorporation in this case, will be enforced and the rights of aggrieved parties secured unless the agreement is against public policy. An agreement among shareholders for cumulative voting, if not otherwise illegal, is not opposed to public policy. The general purpose of such manner of voting is that representation on the board may be had by minority stockholders. Such a representative would participate in the management and thereby become informed concerning acts of the officers and directors. Naturally, a director representing minority interests would exercise a restraining influence on reckless and wasteful acts; and the information he gained would permit prompt action by minority stockholders through recourse to the courts or otherwise if the interests of stockholders generally were suffering through some policy advocated or undertaken by officers for their individual benefit. Such a policy is far from being inherently wrong or unjust. In many States cumulative voting is permitted by constitution or statute without the necessity of including provisions therefor in the certificate of incorporation. (Cook, *op. cit., supra*, § 609-a.) This fact, together with the permissive law in this State, indicates that such a method of voting does not violate any principles of public policy.

We reach the conclusion that the petitioner acquired definite legal rights under the by-laws and the provisions of the amended certificate, and that those rights should be protected here as against those who now seek, for their own advantage, to escape from agreements made when they were permitted to become stockholders.

The motion to resettle the order entered by the respondents was made so that a certain additional affidavit would be included in the recital of papers submitted. In the answering affidavits the respondents, in an evasive and inconclusive way, denied that

there was any provision for cumulative voting in the amended certificate. An affidavit submitted by the petitioner in reply stated, among other things, that the quotation from the amended certificate, in the petition and affidavits originally presented, was based on a photostatic copy of the minutes contained in the minute book of the corporation; and there is set forth a copy of the minutes of the meeting of February 21, 1921, wherein the resolution was adopted changing the certificate. This affidavit was verified March 13, 1934, apparently about the time the motion was argued and the papers submitted. It was furnished to the court before the decision was made on March nineteenth, and subsequently filed with the other motion papers. The motion to resettle so as to recite this additional affidavit was denied on the narrow ground that " Leave was not obtained to file replying affidavits — they were included among the filed papers left with the clerk — but they were not considered by the court on the motion." The fact that formal leave to reply was not asked or given is of little consequence. There was sharp dispute concerning certain facts, and a novel legal question was presented. The parties were entitled to make a full record, and the replying affidavit should have been considered. It has been considered on this appeal.

The order of March 19, 1934, in so far as it determines that Charles Schatz was duly elected a member of the board of directors of the corporation, should be reversed on the law and the facts, with fifty dollars costs and disbursements, and the prayer of the petition granted to the extent that Alfred Huller be declared to have been elected a director at the stockholders' meeting held March 3, 1934.

The order of March 27, 1934, should be reversed, without costs, in the exercise of discretion, and the order dated March 19, 1934, should be resettled so as to recite the reply affidavit of Arthur J. Kinsman.

Young, Hagarty, Carswell and Scudder, JJ., concur.

Order dated March 19, 1934, in so far as it determines that Charles Schatz was duly elected a member of the board of directors of the corporation, reversed on the law and the facts, with fifty dollars costs and disbursements, and the prayer of the petition granted to the extent that Alfred Huller be declared to have been elected a director at the stockholders' meeting held March 3, 1934. Order dated March 27, 1934, reversed, without costs, in the exercise of discretion, and the order dated March 19, 1934, resettled so as to recite the reply affidavit of Arthur J. Kinsman.

Settle order on notice.