■ JANET HYMAN et al., Respondents, v THE NEW YORK STOCK EXCHANGE, INC., et al., Appellants. [848 NYS2d 51]—

Order, Supreme Court, New York County (Charles Ramos, J.), entered January 10, 2007, which, insofar as appealed from as limited by the briefs, denied defendants' joint motion to dismiss plaintiffs' remaining cause of action for breach of fiduciary duty, unanimously reversed, on the law, with costs, the motion granted, and the complaints dismissed. The Clerk is directed to enter judgment accordingly in favor of defendants dismissing the complaints.

The following factual allegations are taken predominantly from plaintiff Hyman's amended complaint. On December 2, 2004, The New York Stock Exchange's (the Exchange) management advised its board of directors that it was exploring the possibility of acquiring other "domestic and non-U.S. cash equi-

ties and options trading arenas." At that meeting, the board authorized management to continue exploration of these business avenues.

On January 6, 2005, defendant John Thain, the chief executive officer of the Exchange, advised the board that management had been contacted by nonparty Archipelago Holdings, Inc. (Archipelago)[1] about a possible merger.

At a February 3, 2005 "town hall" meeting, Thain discussed with members the possibility of converting the Exchange from a not-for-profit corporation into a public, for-profit company. While no mention was made of the ongoing merger discussions with Archipelago, Thain allegedly made a statement that "indicated that a conversion of the Exchange from a not-for-profit corporation into a for-profit corporation was a mere theoretical possibility."

On February 10, 2005, the Exchange and Archipelago entered into a mutual confidentiality agreement concerning their ongoing negotiations.

On February 15, 2005, the Exchange publicly announced the formation of a committee to explore the conversion of the Exchange into a for-profit corporation.

On March 1, 2005, plaintiffs Hyman and Rittmaster sold their Exchange memberships for $1,500,000 and $1,475,000, respectively, at a blind auction administered by the Exchange.[2] The next day, plaintiff Lief sold her membership for $1,500,000.

On April 20, 2005, the Exchange's board of directors unanimously voted to approve and adopt a merger agreement with Archipelago. Following the announcement of the merger agreement, the selling price of memberships increased dramatically, in amounts ranging from $2,400,000 on April 25, 2005 to $4,000,000 on December 1, 2005. Previously, in the period between August 3, 2004 and January 10, 2005, the price had decreased from $1,350,000 to $1,000,000. Thus, the plaintiffs sold their memberships as the price began to rebound on the strength of the conversion exploration announcement, but before the price increases accelerated because of the merger announcement.

In separate complaints, plaintiffs alleged, inter alia, that the Exchange and Thain breached their respective duty to disclose, prior to plaintiffs' sales of their Exchange memberships, the ex-

---

**1.** Archipelago operates the Archipelago Exchange, the first all-electronic stock exchange in the United States.

**2.** Under the blind auction, a selling member does not know to whom he or she is selling the membership.

istence of merger negotiations between the Exchange and Archipelago, and that had there been full disclosure of the possibility of the merger, they would not have sold their seats in March 2005.

Defendants moved to dismiss all three complaints on the grounds of lack of specificity (CPLR 3013, 3016 [b]), a defense founded upon documentary evidence (CPLR 3211 [a] [1]), and failure to state a cause of action (CPLR 3211 [a] [7]). While the Exchange maintained that it owes its seatholders no fiduciary duties, Thain argued that he fulfilled any fiduciary duties he owed to plaintiffs and that the business judgment rule shielded the decision to keep the merger negotiations confidential. In opposition, plaintiffs claimed that the public announcements prior to the Archipelago announcement were incomplete and/or misleading since they merely suggested the possibility of a conversion into a for-profit corporation. Further, they claimed that between March 1, 2005 and April 15, 2005, nonparty Thomas Caldwell, a member of the Exchange, and his son sponsored the purchase of five seats when Caldwell was on the committee exploring the possibility of the Archipelago merger.

The motion court should have dismissed the first cause of action for breach of fiduciary duty as against the Exchange. Contrary to the premise of that cause of action, it is well settled that a corporation does not owe fiduciary duties to its members or shareholders (*see Kavanaugh v Kavanaugh Knitting Co.*, 226 NY 185, 194 [1919] ["no trust relation ordinarily exists between the stockholders . . . and the corporation"]; *Gates v BEA Assoc., Inc.*, 1990 WL 180137, *6, 1990 US Dist LEXIS 15299, *18 [SD NY 1990] ["(u)nder New York law, a corporation does not have fiduciary duties to its shareholders"]). As the Exchange correctly argues, to recognize a fiduciary relationship between the corporation and its shareholders would lead to the confounding possibility that a shareholder of a corporation could bring a derivative action on behalf of the corporation against the corporation itself.

Thain's motion to dismiss the cause of action for breach of fiduciary duty against him should have been granted as well. Plaintiff's bare allegations that Thain "indicated" that a conversion from a not-for-profit corporation into a for-profit public corporation was "a mere theoretical possibility," fails to satisfy the pleading requirements of CPLR 3016 (b) (*see Brown v Wolf Group Integrated Communications, Ltd.*, 23 AD3d 239 [2005]). Since two of the plaintiffs allege that they were privy by telephone to Thain's statements, they should have been able to recite with more specificity Thain's actual words or actions that are alleged to have been misleading.

We note that the complaints do not allege insider trading by Thain or anyone else, and the motion court erred in alluding to "the possibility of insider trading" by persons not named in this action as part of its rationale for sustaining this cause of action. Concur—Andrias, J.P., Gonzalez, Sweeny, McGuire and Malone, JJ. [*See* 18 Misc 3d 1112(A), 2007 NY Slip Op 52500(U).]